# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

FRANK MOLINA, JR.,

    *Plaintiff,*

vs.

Case No. 18-CV-1084-EFM-KGG

TONY BLEVINS, MARK LOVE and
RICK FISHER,

    *Defendants.*

## MEMORANDUM AND ORDER

    For the third time, several of these parties are before this Court. Plaintiff Frank Molina, Jr. brings several state law claims against three Defendants alleging that Defendants defamed him and intentionally inflicted emotional distress upon him by making untrue statements that he misappropriated and mismanaged funds. Defendants removed the case and now seek dismissal (Doc. 8). They first assert that Plaintiff's claims are barred by res judicata. Next, they contend that Plaintiff's claims are preempted by the (1) Labor Management Relations Act ("LMRA"), (2) the *Garmon* doctrine, or (3) the Labor Management Reporting and Disclosure Act ("LMDRA"). Finally, they contend that Plaintiff fails to state a claim. Plaintiff failed to file a timely response to Defendants' motion. However, Plaintiff did file a Motion to Remand (Doc. 10) in which he disagrees with Defendants' contentions and requests that the Court remand the case back to state court. Because the Court finds that the case is properly before this Court, the Court

denies Plaintiff's motion. In addition, the Court grants Defendants' motion as Plaintiff's claims are preempted by the LMRA and he fails to state a claim.

## I. Factual and Procedural Background

Plaintiff Frank Molina, Jr. originally filed a complaint (the first Complaint) in the district court of Sedgwick County, Kansas on March 14, 2016, against six Defendants. Those Defendants included the International Association of Machinists and Aerospace Workers ("IAMAW"), District Lodge 70 of IAMAW ("District 70"), Robert Martinez, Jr., Tony Blevins,[1] Mark Blondin, and Frank Larkin. IAMAW is a national union, and District 70 is a labor organization located in Wichita, Kansas. Martinez, Jr., Blevins, Blondin, and Larkin all held leadership-type positions with IAMAW.

Plaintiff's first Complaint was brief,[2] but he alleged that he was an employee of IAMAW and District 70. He claimed that on February 2, 2016, he was removed from his employment in violation of District 70's and IAMAW's specific procedures. Thus, he was allegedly wrongfully terminated. He also alleged breach of contract on the same facts. Related to those facts, Plaintiff alleged that on and after February 2, 2016, Defendants (including Blevins) falsely stated to the news media that he had misappropriated and mismanaged funds which was untrue and defamed him. He asserted that he had suffered severe humiliation, loss of his employment, and loss of respect of his family and friends.

---

[1] Blevins was named as a Defendant in both the previous and the current case.

[2] Plaintiff's second complaint is even more cursory.

On April 13, 2016, Defendants filed a Notice of Removal ("the first removal") with this Court and asserted that all claims were preempted by the LMRA or the LMDRA.[3] On April 21, 2016, Defendants filed a Motion to Dismiss for Failure to State a Claim. On January 25, 2017, the Court issued a Memorandum and Order granting Defendants' Motion to Dismiss. The Court found that Plaintiff's claims were preempted by the Labor Management Relations Act ("LMRA") and that he failed to state a claim for breach of contract, wrongful termination, or defamation.

Pursuant to Federal Rule of Civil Procedure 59, Plaintiff sought to alter the judgment. In Plaintiff's Motion to Alter Judgment, Plaintiff stated that he had asserted a claim for the tort of outrage (intentional infliction of emotional distress) that the Court did not address and alternatively requested that the case be remanded to state court. In denying Plaintiff's motion, the Court noted that Plaintiff's two allegations were insufficient to state a claim for the tort of outrage. In addition, the Court determined that Plaintiff was out of time to request a remand to state court.

Between the time of this Court's order dismissing Plaintiff's claims (January 25, 2017) and Plaintiff's Motion to Alter Judgment (February 17, 2017), Plaintiff apparently filed another complaint in the district court of Sedgwick County. This February 1, 2017 complaint ("the second Complaint") is the subject of this order.

In Plaintiff's cursory second Complaint, he asserts that Defendants Tony Blevins, Mark Love, and Rick Fisher stated to the news media on and after February 2, 2016, the untrue statement that he misappropriated and mismanaged funds. He alleges that these statements are defamatory

---

[3] Once the case was removed to this Court, it was designated Case No. 16-CV-1099. A related case, *Ledbetter v. Int'l Assoc. of Machinists & Aerospace Workers,* Case No. 16-CV-1101, was also removed to this Court. In that case, Plaintiff Becky Ledbetter asserted the exact same claims against the same Defendants. The only difference is the name of the Plaintiff.

and that he suffered severe loss of respect from his family, friends, and community and loss of income. Plaintiff also claims that these statements were made with a callous disregard for the truth and constitute outrageous behavior.

On May 8, 2017, Defendants filed a Notice of Removal ("the second removal") to this Court and asserted that Plaintiff's claims were preempted by the LMRA.[4] On May 22, 2017, Defendants filed a Motion to Dismiss asserting that (1) Plaintiff failed to state a claim because of the doctrine of res judicata, (2) Plaintiff's claims were completely preempted by the LMRA, (3) Plaintiff failed to state sufficient facts to state a claim, and alternatively, (4) Plaintiff's claims were completely preempted under the *Garmon* doctrine and the LMDRA. Plaintiff filed a response to this motion, entitled "Reply to Motion to Dismiss."[5] In this response, he asked the Court to remand the case back to state court. Thus, the response was designated as a Motion to Remand.

The Court considered the parties' arguments, as well as the cursory eight-paragraph second Complaint. Four of the allegations related to the parties and simply stated their names and place of residence or work (all in Kansas).[6] Two allegations related to Plaintiff's defamation claim.[7] The *only* specific factual allegation stated that on or about February 2, 2016, Blevins, Love, and Fisher told the news media and others that Plaintiff misappropriated and mismanaged funds which was an untrue statement and defamed him. The final two paragraphs stated that Plaintiff incorporated all of the other allegations and that the above statements were made with a

---

[4] This case was designated Case No. 17-CV-1101. Ledbetter also filed an additional state court case, and her case was removed to this Court as well. Her case was designated 17-CV-1100.

[5] He also filed a memorandum in support.

[6] These four allegations were labeled "Claim I."

[7] These two allegations were labeled "Claim II."

callous disregard for the truth and constitute outrageous behavior.[8] The Court found that from the face of the second Complaint, it did not appear that Plaintiff's claim had anything to do with the LMRA. It found that the second Complaint was very cursory and gave little information as to the facts underlying his claims.[9] Thus, the Court found that it was lacking subject matter jurisdiction and granted Plaintiff's Motion to Remand.

Upon remand to state court, Defendants filed a Motion for More Definite Statement under K.S.A. § 60-212(e). Plaintiff filed a document entitled Petitioner's Statement. He also served Defendants' counsel with multiple documents. In the statement, Plaintiff set forth 12 paragraphs.

He asserts that on February 2, 2016, Blevins told him (in the presence of Defendants Love and Fisher and the sheriff) that he was suspended and charged with mass overspending, no proper approval for lodge expenses, and failure to work with the deputy supervising the lodge. Plaintiff states that he told Blevins that he had not done any of these things but Blevins told him to pack his bags anyway. He claims that several people took pictures of him leaving. He also alleges that the charges were relayed to the news media whom reported on it. In addition, Plaintiff alleges that Defendants posted altered pictures of him on February 3.[10]

Plaintiff also alleges that a couple of weeks later Defendants stated in a membership meeting the charges against him. Several people in that meeting then allegedly told the media that the union was missing $3.5 million dollars. Several other individuals stated that the meeting was about embezzlement and that nobody had information regarding where the money was.

---

[8] These two allegations were labeled "Claim III."

[9] The Court noted that a similar case had previously been before the Court, but stated that it could not add facts to Plaintiff's second Complaint to ascertain Plaintiff's cause of action.

[10] There are no allegations as to what was altered.

On March 9, 2016, Defendants allegedly told staff that they were not supposed to tell anyone what went in or out of the district. Plaintiff also contends that in April, Blevins and Love told people at a meeting that there was a deficit of $3.5 million and that the FBI had been contacted and Plaintiff would be led off in handcuffs. "They" posted on Facebook that Plaintiff and Ledbetter would be in an orange jumpsuit and that would be one of the best days of IAM (the union).

Plaintiff states that Blevins and Love approached Textron, Spirit AeroSystems, Lear Jet, and Gallagher Benefits in April to inquire whether Plaintiff asked for any kickbacks or asked for any bribes. In May, Blevins stated in a Textron meeting that the FBI was investigating Plaintiff and Ledbetter for racketeering.

In September, Blevins allegedly stated that Plaintiff and Ledbetter were barred from holding office. In October, Blevins "addressed the delegates" and advised them that they would have to ask Plaintiff and Ledbetter what they were found guilty of because he did not want to embarrass them. Plaintiff also alleges that in August, the FBI cleared him of any wrongdoing, but Blevins still told members in September and October that they were waiting for the FBI.

In response to Plaintiff's statement adding more factual allegations, Defendants removed the case to this Court again ("the third removal"). For the basis of the third removal, Defendants assert that Plaintiff's claims are completely preempted by federal law (the LMRA) because Plaintiff's claims are based on the same factual scenario that he previously sought relief from and which was preempted by the LMRA. Defendants have filed a Motion to Dismiss (Doc. 8), and Plaintiff has filed a Motion to Remand (Doc. 10).

## II. Analysis

There are two motions before the Court—one to remand the case back to state court and one to dismiss the case. Generally, the Tenth Circuit prefers resolution of the motion to remand prior to resolution of the motion to dismiss.[11] If the Court determines that remand is appropriate, the Court is without subject matter jurisdiction to resolve the motion to dismiss.[12] The Court will therefore address Plaintiff's Motion to Remand first and whether Defendants' removal was proper. The Court will then address Defendants' Motion to Dismiss.

### A. Plaintiff's Motion to Remand

"[T]he propriety of removal is judged on the complaint as it stands at the time of the removal."[13] "Under the well-pleaded complaint rule, the plaintiff is considered the master of the claim and thus the federal question giving rise to jurisdiction must appear on the face of the complaint."[14] A plaintiff, however, may not "circumvent federal jurisdiction by omitting federal issues that are essential" to her claim.[15] In addition, there is "an exception . . . to the well-pleaded complaint rule for a narrow category of state-law claims that can independently support federal jurisdiction and removal. These claims are 'completely preempted' because they fall within the

---

[11] *In re Bear River Drainage Dist.*, 267 F.2d 849, 851 (10th Cir. 1959).

[12] *Id.*

[13] *Salzer v. SSM Health Care of Okla., Inc.*, 762 F.3d 1130, 1133 (10th Cir. 2014) (quotation marks and citation omitted).

[14] *Karnes v. Boeing Co.*, 335 F.3d 1189, 1192 (10th Cir. 2003) (quotation marks and citation omitted).

[15] *Schmeling v. NORDAM*, 97 F.3d 1336, 1344 n. 2 (10th Cir. 1996).

scope of federal statutes intended by Congress completely to displace all state law on the given issue and comprehensively to regulate the area."[16] The LMRA is one such statute.[17]

Defendants removed the case by stating that Plaintiff's claims were preempted by the LMRA. As noted above, Plaintiff's eight-paragraph complaint is very cursory and gives little information as to the facts underlying his claims or even the basis for the legal elements of his claims. Plaintiff, however, leaves out material facts as to his claims. The Court is aware of these facts because Plaintiff was previously before this Court asserting almost identical claims with additional facts related to the labor union. In addition, Plaintiff's statement in response to Defendant's Motion for More Definite Statement clarifies that his current claims arise out of the same factual scenario that the Court previously considered.

For instance, Plaintiff's first Complaint identified the union as a party as well as current Defendant Blevins. Plaintiff previously filed suit against Blevins, IAMAW, District 70 and several other individuals on the basis of the same facts. Specifically, in Plaintiff's previous suit, he included facts stating that IAMAW was a national union and that the additional individual Defendants (including current Defendant Blevins) worked for IAMAW in management-type positions. His previous suit alleged that Defendants wrongfully terminated him and breached a contract because they did not follow specific union procedures with regard to his termination. Finally, in his specific defamation claim, he stated that on and after February 2, 2016, Defendants stated to the news media that Plaintiff misappropriated and mismanaged funds which was untrue

---

[16] *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1220-21 (10th Cir. 2011) (citations omitted).

[17] *See* 29 U.S.C. § 185; *Garley v. Sandia Corp.*, 236 F.3d 1200, 1207-08 (10th Cir. 2001).

and defamed him. He alleged that these statements were made by various members of the IAMAW and District 70.

Plaintiff's current defamation claim (as well as his intentional infliction of emotional distress claim) relates to events occurring on and after February 2, 2016, and is therefore based on the incident surrounding his removal from his union position. Plaintiff's defamation and intentional infliction of emotional distress claims are inextricably linked to his removal from his union position and labor management principles. Thus, Plaintiff's claims are preempted by the LMRA, and Defendant's removal of the case is proper. Accordingly, the Court has subject matter jurisdiction and denies Plaintiff's request to remand the case to state court.

**B.     Defendants' Motion to Dismiss**

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[18] Upon such motion, the Court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[19] A claim is facially plausible if the plaintiff pleads facts sufficient for the Court to reasonably infer that the defendant is liable for the alleged misconduct.[20] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well as the grounds on which each claim rests.[21] Under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint,

---

[18] Fed. R. Civ. P. 12(b)(6).

[19] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[20] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[21] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

but need not afford such a presumption to legal conclusions.[22] Viewing the complaint in this manner, the Court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[23] If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' "[24] A court may take judicial notice of pleadings in prior cases without converting that motion to one for summary judgment.[25]

Defendants assert that Plaintiff's claims are preempted by the LMRA and thus he fails to state a claim upon which relief can be granted. Section 301 of the LMRA, or 29 U.S.C. § 185(a), provides that "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States having jurisdiction of the parties . . . ." "[S]ection 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement."[26] In addition, § 301 completely preempts "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that

---

[22] *Iqbal*, 556 U.S. at 678-79.

[23] *See id.* at 678. ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citing *Twombly*, 550 U.S. at 556)).

[24] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

[25] *See Tal v. Hogan*, 453 F.3d 1244, 1264-65 n.24 (10th Cir. 2006) (citing *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n.1 (10th Cir. 2004)). *See also Merswin v. Williams Cos., Inc.*, 364 F. App'x 438, 441 (10th Cir. 2010) (stating that "[i]t is settled that the district court can take judicial notice of its own decision and records in a prior case involving the same parties" and noting that the district court did not err when it did not convert a motion to dismiss to one for summary judgment because the court could "take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact") (citing *Q Int'l Courier, Inc. v. Smoak*, 441 F.3d 214, 216 (4th Cir. 2006)).

[26] *Cisneros v. ABC Rail Corp.*, 217 F.3d 1299, 1302 (10th Cir. 2000) (quotation marks and citations omitted).

agreement, . . . whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort."[27]

The test for whether a state law claim is preempted by § 301 is "whether evaluation of the tort claim is *inextricably intertwined* with consideration of the terms of the labor contract."[28] Section 301 is not limited simply to collective bargaining agreements between employees and unions.[29] Instead, § 301 covers contracts or union constitutions between labor organizations.[30] Thus, a claim brought by an individual that a labor organization breached the terms of the constitution is also subject to the LMRA.

In this case, Plaintiff brings two claims: defamation and intentional infliction of emotional distress.[31] As noted above, Plaintiff's second Complaint contains sparse facts. The relevant, specific factual allegation states that on or about February 2, 2016, Blevins, Love and Fisher stated to the news media and others that Plaintiff misappropriated and mismanaged funds which was an untrue statement and defamed him. Plaintiff's statement in response to Defendants' Motion for More Definite Statement includes several additional facts. He states that Blevins told him (in the presence of Defendants Love and Fisher and the sheriff) that he was suspended and charged with mass overspending, no proper approval for lodge expenses, and failure to work with the deputy supervising the lodge. Defendants also allegedly told people at a meeting that there was a deficit

---

[27] *Id.* (quotation marks and citations omitted).

[28] *Garley*, 236 F.3d at 1208 (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985)).

[29] *Wooddell v. Int'l Bhd. of Elec. Workers, Local 71*, 502 U.S. 93, 100-01 (1991).

[30] *Id*. 101-02.

[31] The Court has taken a very deferential and generous view of Plaintiff's second Complaint.

of millions of dollars from the union and Plaintiff's arrest would be one of the best days of the union.

Viewing Plaintiff's second Complaint and his statement of additional facts, it is apparent that Plaintiff's facts relate to Plaintiff's previous lawsuit removed to this Court. As noted by the Tenth Circuit, "when confronted with a § 301 preemption challenge to a state defamation action, federal courts look beyond the allegations of the complaint . . . to determine whether the wrong complained of actually arises in some manner from the breach of the defendants' obligations under a collective bargaining agreement."[32]

Here, Plaintiff's claims are based on the same actions and allegations in his previous complaint. The factual scenario that Plaintiff seeks relief for is based on circumstances regarding his removal from his union position. These facts relate to the collective bargaining agreement that governs Plaintiff and allows for his removal from the union and would require the Court to interpret the terms of the collective bargaining agreement in considering Plaintiff's claim for defamation.

As to Plaintiff's claim for intentional infliction of emotional distress, this claim is also preempted by the LMRA as it is based entirely on the same facts as the defamation claim. Plaintiff simply alleges that all actions taken were made with a callous disregard for the truth and constitute outrageous behavior. Furthermore, Plaintiff does not include any facts to state a claim for intentional infliction of emotional distress.[33]

---

[32] *Garley*, 236 F.3d at 1211 (quotation marks and citation omitted).

[33] Plaintiff included these same allegations in his first Complaint before this Court, but the Court did not discuss it in its January 25, 2017 Order because the allegations were so sparse that the Court did not read the complaint to assert a claim for the tort of outrage. In Plaintiff's motion for reconsideration, Plaintiff stated that he had asserted a claim for intentional infliction of distress and the Court failed to address it. In this Court's April 4, 2017 Order denying Plaintiff's motion, the Court noted that the allegations were in no way sufficient to assert a claim for intentional infliction of emotional distress.

To state an intentional infliction of emotional distress claim, Plaintiff must allege four elements: "(1) [t]he conduct of the defendant was intentional or in reckless disregard of the plaintiff; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the defendant's conduct and the plaintiff's mental distress; and (4) the plaintiffs [sic] mental distress was extreme and severe."[34] Plaintiff does not include any factual allegations relating to these elements and does not even allege all of the legal elements because Plaintiff does not allege causation or extreme mental distress. Thus, Plaintiff fails to state a claim for the tort of outrage.

In sum, Plaintiff's state law claims are preempted by § 301 and he fails to state a claim.[35] Thus, the Court dismisses his complaint. In addition, the Court denies Plaintiff's request to remand the case to state court.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc. 8) is **GRANTED**.

---

[34] *McIlrath v. City of Kingman, Kan.*, 2014 WL 1887652, at *4 (Kan. Ct. App. 2014) (unpublished) (quotation marks and citation omitted).

[35] It also appears that res judicata is applicable. Res judicata, or "claim preclusion applies when three elements exist: (1) a final judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits." *Pelt v. Utah*, 539 F.3d 1271, 1281 (10th Cir. 2008) (quotation marks and citation omitted). Here, element one is met as there was a final judgment on the merits in the earlier case. With regard to element two, Plaintiff previously brought suit and currently brings suit against Blevins. As for Defendants Love and Fisher, it appears that they are in privity with IAMAW or District 70 (the union defendants in the previous lawsuit). "Privity requires, at a minimum, a substantial identity between the issues in controversy and showing the parties in the two actions are really and substantially in interest the same." *Id.* (quotation marks and citation omitted). Plaintiff previously contended that defamatory statements were made by union employees and related to his removal from his position with the union. Although Plaintiff fails to include specific allegations relating to the current Defendants involvement or relationship with the union, it appears that there is a substantial identity between the issue and the parties in the two actions. Finally, with regard to the identity of the cause of action, the Tenth Circuit has adopted a "transactional approach" in that "a cause of action includes all claims or legal theories of recovery that arise from the same transaction, event, or occurrence." *Plotner v. AT&T Corp.*, 224 F.3d 1161, 1169 (10th Cir. 2000) (citation omitted). Here, Plaintiff specifically brought a defamation claim in both cases. As to Plaintiff's intentional infliction of emotional distress claim, he attempted to bring that claim in his prior lawsuit as he argued in his previous Motion to Alter Judgment that he brought that claim but the Court failed to address it. As noted above, Plaintiff's intentional infliction of emotional distress claim is based on the same event. Thus, res judicata would also bar Plaintiff's claims.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Remand (Doc. 10) is **DENIED**.

**IT IS SO ORDERED**.

**This case is closed.**

Dated this 7th day of August, 2018.

                                      ERIC F. MELGREN
                                      UNITED STATES DISTRICT JUDGE